# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

KENNETH HARDWICK,                        )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )    **Case No. 12-2039-RDR**
                                         )
AMSTED RAILWAY CO., INC.,                )
                                         )
                    Defendant.           )
_____ _

## MEMORANDUM AND ORDER

Plaintiff brings this action asserting claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the Family Medical Leave Act, 42 U.S.C. § 2611 et seq. He contends that his former employer, Amsted Rail Company, Inc., violated his rights under the ADA and FMLA when it (1) "threatened" him with transfer to another position; and (2) terminated him from employment. Specifically, plaintiff raises five claims: (1) disability discrimination in violation of the ADA; (2) failure to accommodate in violation of the ADA; (3) retaliation in violation of the ADA; (4) interference with FMLA rights; and (5) retaliation in violation of the FMLA. This matter is presently before the court upon defendant's motion for summary judgment.

I.

In its motion, defendant contends that it is entitled to summary judgment on all of plaintiff's claims. It argues that plaintiff cannot establish (1) a prima facie case of disability discrimination

under the ADA because he provides no evidence of a discriminatory animus on the part of Amsted, nor can he rebut with evidence of pretext Amsted's legitimate, non-discriminatory reasons for the actions it took concerning plaintiff; (2) retaliation under the ADA because he provides no evidence that he engaged in activity protected by the ADA; (3) failure to accommodate under the ADA because he provides no evidence that Amsted failed to accommodate any reasonable request for accommodation he presented to it; (4) FMLA interference because he provides no evidence that Amsted prevented him from taking FMLA leave; and (5) a prima facie case of retaliation under the FMLA because he provides no evidence of a retaliatory animus on the part of Amsted, and cannot rebut with evidence of pretext Amsted's legitimate, non-retaliatory reasons for the actions it took concerning plaintiff.

## II.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the

inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Id</u>. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 256. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial. <u>Id</u>. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. <u>See</u> <u>id</u>. The court must consider the record in the light most favorable to the nonmoving party. <u>See</u> <u>Bee v. Greaves</u>, 744 F.2d 1387, 1396 (10th Cir. 1984), <u>cert. denied</u>, 469 U.S. 1214 (1985). The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." <u>Celotex</u>, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

3

III.

Most of the facts are undisputed in this case. The court will discuss the facts that are controverted as we consider the arguments of the parties.

Plaintiff worked for the defendant from approximately December 2007 through May 2011. Hardwick worked as a machinist on the mold repair team at Amsted's Griffin Wheel facility located in Kansas City, Kansas. Amsted's Kansas City, Kansas facility is a steel foundry where steel is used to produce railroad car wheels. As a machinist, Hardwick was responsible for machining the wheel mold back to the required specifications, which requires months of training to learn. The machinist position is not a job that anyone off the street can walk in and fill.

In 2011, the last year of Hardwick's employment, only one machinist worked per shift, and the facility ran three shifts per day. In total, only 3 to 4 individuals at Amsted were able to perform Hardwick's job. Hardwick understood that it was an essential function of his position to work mandatory overtime when required by the production needs.

Amsted's Kansas City, Kansas, facility had an attendance policy, which provided that once an employee received a total of 12 points, the employee was subject to termination under the attendance policy. Hardwick received, reviewed, and understood Amsted's attendance

policy. Employees do not receive attendance points for FMLA-related absences.

On September 9, 2009, Hardwick obtained a doctor's note that indicated Hardwick's planned medical treatment was a reduced hours schedule that prohibited him from working more than 40 hours per week. According to Hardwick's FMLA paperwork, his need for a reduced hours schedule was based upon his medical treatment for (or recovery from) high blood pressure. Amsted accommodated Hardwick's 40-hour restriction the entire time it was in effect.

In October 2010, employees were working a lot of mandatory overtime. In fact, machinists might work as much as 80 hours per week during periods of required overtime. Because Hardwick could not work overtime, his allotted overtime was split between two other machinists, who covered Hardwick's overtime in addition to their own required overtime, which created a hardship on those machinists.

In October 2010, Phil Brown in Amsted's Human Resources department spoke with Hardwick about whether he still needed the 40-hour restriction, which Hardwick thought was a reasonable request, considering the hardship on the other machinists. He explained to Hardwick that Amsted would accommodate his 40-hour restriction, but may need to move him to another position where the restriction would be easier to accommodate.

Hardwick and his medical provider both agreed to try increasing

his work restrictions to up to 50 hours per week. On October 11, 2010, restrictions were increased to allow him to work up to 50 hours per week. Amsted accommodated the 50-hour restriction the entire time it was in effect.

On February 1, 2011, Hardwick submitted an FMLA certification, which again included a plan for his medical treatment that included reduced hours limited to 40 hours per week. On February 10, 2011, Hardwick met again with Phil Brown (Human Resources) and Jeff Rehder (Operations) to discuss the restriction. Hardwick said the 40-hour restriction was a mistake, and he was still able to work 50 hours. Rehder told Hardwick that if he could not work more than 50 hours, the Company would need to move him to another position to better accommodate his restrictions. Hardwick offered to see if he could get his restrictions completely lifted rather than move to another position.

The position Amsted considered moving Hardwick to is called "the middle", which Hardwick believes is the department responsible for cleaning the wheel molds. Hardwick has no personal knowledge of the job responsibilities for that position or the working conditions or working environment for that position. He has only walked through the department once, during a plant shutdown when no one was working.

On February 21, 2011, Hardwick's medical provider amended the FMLA certification so that there was no restriction on the number

of hours he could work.  Hardwick never actually changed positions. He continued to work as a machinist on the mold repair team throughout his employment.

Throughout the time Hardwick requested FMLA leave, there was never a time that Amsted denied him any requested FMLA leave, nor did the Company ever assess any attendance points to him for FMLA-related absences.    Amsted accommodated all restrictions Hardwick presented to the Company.

Amsted tracks employees' attendance and accrued attendance points on an "attendance tracker." Hardwick admits that his attendance tracker accurately and correctly reflects his absences and the corresponding points he accrued during his employment. Hardwick did not go to work on May 22, 2011, and did not call in his absence in advance. And he did not request FMLA leave for May 22, 2011. As a result, he was a "no call/no show" under the attendance policy.

Following his absence on May 22, 2011, Hardwick was placed on suspension pending an investigation into his absences.  Hardwick claimed he was not aware of the mandatory overtime required on May 22, 2011. However, when Amsted investigated the circumstances, several employees reported that Hardwick acknowledged that he knew that the mold repair team was working on May 22nd, including: Jeff Morris, Anthony Locke and Cedric Jordan.  Hardwick admits that co-worker Chris Ruttan told him the mold team was required to work

7

on May 22, 2011, but Hardwick did not believe him and did not make any effort to confirm with management whether he was required to work. Given the results of the Company's investigation into Hardwick's attendance, Hardwick admits that it was reasonable for the Company to conclude that Hardwick was a "no call/no show" on May 22, 2011 and assess him three points for that absence, which brought his total attendance points to 12.5 - termination level under the attendance policy. Hardwick's attendance tracker correctly reflects that he had incurred 12.5 attendance points at the time of his termination.

On or about April 18, 2011, Hardwick filed a charge of discrimination with the Kansas Human Rights Commission ("KHRC"), asserting that Amsted discriminated against him based upon his race. At the time Hardwick submitted the April charge, he had not made any prior complaints of discrimination and he did not believe that: (1) he had been retaliated against under the ADA or FMLA, (2) he had been discriminated against based upon any alleged disability, or (3) Amsted had interfered with his rights under the FMLA. When Hardwick spoke with the KHRC after his termination, he believed only that he had been retaliated against for complaining of race discrimination. Hardwick still did not believe Amsted violated any rights he had under the ADA or FMLA. On or about June 30, 2011, after retaining an attorney, Hardwick filed an amended charge alleging race discrimination, disability discrimination and retaliation.

A.  ADA--Disability Discrimination

The defendant contends initially that plaintiff cannot establish disability discrimination under the ADA.  The defendant asserts that plaintiff cannot establish a prima facie case of discrimination concerning (1) the discussions about moving him to another position; and (2) his termination.  The defendant further contends that it had a legitimate, non-discriminatory reason for terminating plaintiff and plaintiff cannot show that its reason for terminating him was a pretext for discrimination.  The defendant next argues that plaintiff cannot establish a failure to accommodate under the ADA.  Finally, the defendant contends that plaintiff cannot establish retaliation under the ADA.

The ADA prohibits covered employers from discriminating against their employees on the basis of disability. 42 U.S.C. § 12112(a). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).

The court applies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to ADA discrimination claims.  EEOC v. C.R. England, Inc., 644 F.3d 1028, 1038 (10th Cir. 2011). Under this framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination.

See McDonnell Douglas, 411 U.S. at 802. If he is able to make such a showing, the burden would shift to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions.  See id. Plaintiff would then bear the ultimate burden of showing that the defendant's proffered reason is in fact a pretext designed to mask discrimination.  See id. at 804.

The burden of establishing a prima facie case of discrimination under the ADA is "not onerous."  Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005). To make out a prima facie case of disability discrimination under the ADA, plaintiff must show that (1) he was a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he suffered discrimination by an employer because of that disability.  C.R. England, Inc., 644 F.3d at 1037-38.

The court first considers plaintiff's allegation of ADA disability discrimination regarding the "threatened" transfer to another position.  Plaintiff contends that the defendant violated the ADA when it "threatened" transferring him to another position in October 2010 and again in February 2011.  He asserts that he has established a prima facie case of discrimination under the ADA.  The defendant contends that plaintiff cannot establish a prima facie case because (1) the possibility of moving the defendant to another

position to accommodate his restrictions does not constitute an actionable adverse employment action; (2) plaintiff was not a qualified individual because he could not perform the essential functions of the machinist position; and (3) it did not discuss moving plaintiff to another position because he was disabled.

The parties differ on their interpretation of what occurred during the conversations about the possible transfer of plaintiff to "the middle," another area of the defendant's workplace. Plaintiff has characterized the proposed transfer as a "threat." The defendant has suggested that the proposed transfer was simply a discussion.

The court finds it unnecessary to resolve this dispute. The facts are uncontroverted that the defendant suggested the possibility of a transfer to "the middle" if he did not get the restriction on the number of work hours lifted. This transfer never occurred because the plaintiff agreed to lift the restriction rather than move to another position. The court is persuaded that the action taken by defendant was not an "adverse employment action."

The Supreme Court has stated that an adverse employment action includes conduct constituting "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). In C.R. England, the Tenth

Circuit provided further guidance as to the meaning of "adverse employment action." The court noted that a liberal definition has been applied taking "'a case-by-case approach, examining the unique factors relevant to the situation at hand.'" 644 F.3d at 1040 (quoting Hillig v. Rumsfeld, 381 F.3d 1028, 1031 (10th Cir. 2004)). While the Tenth Circuit acknowledged the previously quoted statement from the Supreme Court in Ellerth, the court stated that actions which cause harm to future employment prospects, like a negative job reference, can also be considered an adverse employment action. Id. The court cautioned that more than "de minimus harm" or a "de minimus impact" upon an employee's job opportunities or job status must be shown and that "mere inconvenience or an alteration of job responsibilities" will not qualify as an adverse employment action. Id.

The court is not persuaded here that the possible transfer of the plaintiff to another area of the plant constitutes an adverse employment action. See McCrary v. Aurora Pub. Schs., 57 Fed.Appx. 362, 368-69 (10th Cir. 2003)(plaintiff failed to meet burden of establishing that proposed transfer to another position was an adverse employment action, and employee's negative views of transfer is alone insufficient). Plaintiff has failed to make any argument or cite any case law indicating that this possible transfer constitutes an adverse employment action. He has only suggested, with no factual support, that the transfer was to a position that

was less desirable. Thus, the court finds that the defendant is entitled to summary judgment on this case. But, the court also finds that one other reason asserted by the defendant requires that summary judgment be entered in its favor for this claim.

A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation. Thus, if plaintiff is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a "qualified individual" and, therefore, not covered under the ADA. The ADA does not require an employer to eliminate an essential job function as an accommodation. EEOC v. Picture People, Inc., 684 F.3d 981, 987 (10th Cir. 2012).

Even if the actions by the defendant constituted an adverse employment action, there is no evidence that plaintiff was a qualified individual with a disability because he could not perform the essential functions of his machinist position. In response to this argument, plaintiff has suggested that he was "qualified" because he was trained as machinist and he never had any issues performing

the functions of a machinist.  However, plaintiff overlooks another essential function of the machinist position--mandatory overtime. Plaintiff has admitted that the ability to work mandatory overtime was an essential function of the machinist position at Amsted. Courts have recognized repeatedly that mandatory overtime can be an essential function of a job.  Davis v. Florida Power & Light Co., 205 F.3d 1301, 1305-06 (11th Cir. 2000); Tardie v. Rehabilitation Hosp. Of Rhode Island, 168 F.3d 538, 544 (1st Cir. 1999). Accordingly, the court finds that plaintiff was not a "qualified individual" for the purposes of the ADA.  Thus, for the foregoing reasons, the defendant is entitled to summary judgment on plaintiff's claim of disability discrimination under ADA concerning a possible transfer to another position.

The court shall next turn to plaintiff's claim that he was terminated in violation of the ADA.  The defendant contends that plaintiff cannot establish a prima facie case because he has presented no evidence that Amsted terminated his employment because of this disability.  The defendant further contends that it had a legitimate, non-discriminatory reason for terminating plaintiff and he has offered no evidence of pretext.

As the uncontroverted facts demonstrate, plaintiff was terminated after he failed to appear for work on May 22, 2011 for a mandatory overtime shift.  He was initially suspended pending an

14

investigation into whether he should be considered a "no call/no show" for May 22nd and assessed three points under company policy which would bring him to 12.5 points, the level for termination. Amsted investigated the circumstances and three employees indicated that plaintiff acknowledged that he knew in advance that the mold repair team was working on May 22, 2011. Plaintiff has admitted that another employee told him that the mold team was required to work on May 22nd, but plaintiff did not believe him. Plaintiff has acknowledged that he made no effort to confirm with management whether he was required to work. Based upon its investigation, Amsted concluded that plaintiff was a "no call/no show" on May 22nd and assessed him three points for the absence, which brought his attendance points to termination level under the attendance policy. Plaintiff has admitted that the defendant accurately assessed his total attendance points at 12.5.

Plaintiff claims that Amsted posted a mandatory Sunday work-shift for the mold repair team, only to cancel it, and then reinstate it by verbally informing all affected employees except for him. He suggests that this "dishonest, deceitful, and illegal act" caused him to accrue enough points under the attendance policy to terminate him. Unfortunately for the plaintiff, there is absolutely no evidence in the record to support the claim that Amsted intentionally sought to mislead plaintiff about the work on May 22nd.

Moreover, there is no evidence disputing that the defendant acted in good faith in investigating the plaintiff's absence and in terminating him. Plaintiff has offered no evidence that the defendant took any action because he was disabled. In sum, the court finds that plaintiff is entitled to summary judgment on plaintiff's termination claim under the ADA.

B. ADA--Retaliation

The court next turns to plaintiff's retaliation claim. The defendant contends it is entitled to summary judgment on this claim because plaintiff has failed to show that he engaged in ADA protected activity prior to the alleged retaliatory, adverse actions he identifies--the threat of transfer to another position in October 2010 and February 2011 and the termination of his employment in May 2011.

The ADA also prohibits employers from retaliating against employees for engaging in certain protected activities, such as reporting alleged violations of the statute to one's employer or to the EEOC. 42 U.S.C. § 12203(a). To prevail on an ADA retaliation claim, a plaintiff must show that (1) he voiced opposition to an act made unlawful by the ADA; (2) he suffered injury or harm; and (3) a causal connection existed between the protected act and the retaliation. See Hennagir v. Utah Dep't of Corr., 587 F.3d 1255, 1266 (10th Cir. 2009)(quoting Burlington N. & Santa Fe Ry. Co. v. White,

548 U.S. 53, 67-68 (2006)).

In April 2011, plaintiff, proceeding without counsel, filed a charge of discrimination with the KHRC and EEOC asserting a claim of race discrimination. He then filed, with the assistance of counsel, an amended charge alleging disability discrimination under the ADA on June 30, 2011, over a month after his termination. Plaintiff contends that he engaged in ADA-protected activity when he filed the April 2011 charge because he later amended that charge to include claims of retaliation. We cannot agree. Since plaintiff filed his charge claiming ADA discrimination after the allegedly adverse employment actions by the defendant, plaintiff cannot assert a claim of retaliation. The defendant cannot "retaliate" when the alleged retaliation occurred prior to the protected activity. Sink v. Wal-Mart Stores, Inc., 147 F.Supp.2d 1085, 1097 (D.Kan. 2001). Accordingly, the defendant is also entitled to summary judgment on plaintiff's claim of retaliation under the ADA.

C.  ADA--Reasonable Accommodation

Finally, the court considers plaintiff's claim that the defendant failed to provide reasonable accommodations under the ADA. Plaintiff's position on this claim is that the defendant should have hired another employee so he did not have to work mandatory overtime. The defendant argues that it is entitled to summary judgment because it accommodated plaintiff's disability and the suggestion made by the

17

plaintiff would have required it to eliminate an essential function of plaintiff's job.

Under the ADA, an employer is required to make "reasonable accommodations" for the known physical or mental limitations of a qualified disabled individual, unless the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation may include "job restructuring, part-time or modified work schedule, reassignment to a vacant position, [and] acquisition or modification of equipment or devices." 42 U.S.C. § 12111(9)(B). Nevertheless, it is well established that the ADA does not require an employer to hire an additional person to perform an essential function of a disabled employee's position. Epps v. City of Pine Lawn, 353 F.3d 588, 593 n. 5 (8th Cir. 2003); Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997); see also 29 C.F.R. Pt. 1630, App. at § 1630.2(o) ("An employer or other covered entity is not required to reallocate essential functions."). A genuine issue of material fact exists if plaintiff shows that his proposed accommodation is feasible or plausible and if defendant is unable to demonstrate that the accommodation would create an undue hardship. See U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002).

There is no dispute that mandatory overtime was an essential function of plaintiff's job.  As noted previously, the ADA does not

18

require that an employer eliminate an essential job function as an accommodation.  See Picture People, Inc., 684 F.3d at 987.  The court finds that the defendant did not fail to make reasonable accommodations to allow plaintiff to perform an essential function of his position.  Accordingly, the defendant is also entitled to summary judgment on this claim.

V.

The defendant contends that plaintiff cannot establish interference under the FMLA.  The defendant suggests that it did not interfere with the plaintiff's right to take FMLA leave by (1) considering transfer to another position; and (2) terminating him from employment.  Finally, the defendant contends that plaintiff cannot establish a prima facie case of FMLA retaliation.

The nature of plaintiff's FMLA claims is puzzling.  Plaintiff has suggested that he was terminated because he was using FMLA leave and had work restrictions.  He states: "Quite simply put, Amsted found a way to terminate [his] employment because [he] required FMLA leave and work restrictions."  He further suggests that the defendant's "threats" to move him to "the middle" qualified as interference under the FMLA.  Plaintiff has asserted that the actions of the defendant constitute both interference and retaliation under the FMLA because the "elements for retaliation of FMLA closely mirror those in an interference violation of FMLA."

The FLMA allows qualified employees to take up to twelve weeks of leave during a twelve-month period if "a serious health condition ... makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of" the rights provided by the FMLA, 29 U.S.C. § 2615(a)(1), or to "discriminate against any individual for opposing any practice" prohibited by the FMLA. 29 U.S.C. § 2615(a)(2). There are two theories of recovery in FMLA suits based on these two provisions in § 2615(a): an "entitlement or interference theory" and a "retaliation or discrimination theory." <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1170 (10th Cir. 2006).

An FMLA interference claim is based on an employer's alleged denial of an employee's FMLA rights, including a wrongful refusal to grant FMLA leave or to reinstate the employee following such leave. <u>Campbell v. Gambro Healthcare, Inc.</u>, 478 F.3d 1282, 1287-88 (10th Cir. 2007). In contrast, a retaliation claim typically accrues when an "employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." <u>Id</u>.

The court is not persuaded that plaintiff has even raised an interference claim. Plaintiff has made no allegations that the defendant ever denied him any FMLA rights. There is no evidence that

the defendant ever refused to grant plaintiff FMLA leave or to reinstate him following such leave.  At best, plaintiff has asserted a claim of retaliation under the FMLA.

The defendant contends that plaintiff can present no evidence that it retaliated against him when it considered transferring him to another position.  The defendant argues, for the reasons previously stated, that such action was not materially adverse because plaintiff never actually changed positions.  The court agrees.  For the reasons previously stated, the court finds that the discussions concerning a possible transfer do not constitute an adverse employment decision.

The defendant next contends that plaintiff cannot establish a retaliation claim under for the FMLA for his termination from employment.  The defendant argues that it had a legitimate, non-discriminatory reason for terminating plaintiff and plaintiff has not demonstrated any evidence of pretext.  Once again, the court agrees.  As explained in the aforementioned discussion concerning plaintiff's ADA claims, the uncontroverted evidence demonstrates that the defendant properly terminated because it had a good faith belief that plaintiff was aware of the scheduled overtime and refused to work.  See C.R. England, Inc., 644 F.3d at 1044(in determining whether proferred reason for employment decision is pretextual, relevant inquiry is not whether employee actually engaged in

misconduct resulting in termination, but "whether the employer held a good-faith belief that [the employee" had done so.")  Plaintiff has simply failed to make any showing of pretext here.  Accordingly, the defendant is entitled to summary judgment on plaintiff's FMLA claims.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 44) be hereby granted.  The defendant is entitled to summary judgment on all claims asserted by the plaintiff. Judgment shall be entered for the defendant and against the plaintiff on all claims.

**IT IS SO ORDERED.**

Dated this 7th day of March, 2013 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge